UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SCOTT AND VIRGINIA WALSH, individually and
on behalf of V.W., a child with a disability,

                    Plaintiffs,

  -  against –

DR. JOHN B. KING, JR., as Commissioner of Education
of the New York State Education Department,
JUSTYN P. BATES, as State Review Officer, and the BOARD
OF EDUCATION of the SHENENDEHOWA CENTRAL
SCHOOL DISTRICT,

                    Defendants.

**COMPLAINT**

Civil Case #:  1:14-CV-1078 (LEK/RFT)

---

Scott and Virginia Walsh, individually and on behalf of V.W., a child with a disability, by and through their attorneys, YOUNG, SOMMER, WARD, RITZENBERG, BAKER & MOORE, LLC, Kenneth S. Ritzenberg, Esq., of counsel, for their complaint hereby allege:

1.     This action is brought pursuant to the Individuals with Disabilities Education Act, as amended, 20 U.S.C. § 1400 et seq. ("IDEA") and the Regulations promulgated thereby at 34 CFR Part 300, Article 89 of the New York State Education Law § 4401 et seq. (Article 89) and the Regulations promulgated thereby at 8 NYCRR Part 200 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and the Regulations promulgated thereby at 34 CFR Part 104.

## THE PARTIES

2.     Plaintiff V.W. is a child with an educational disability as defined by IDEA, 20 U.S.C. § 1401(3)(A). Plaintiff V.W. is a person with a disabling condition as defined by Section 504 of the Rehabilitation Act.

1

3.    Plaintiffs Scott and Virginia Walsh are the parents of V.W., as defined by IDEA, 20 U.S.C. § 1401(23).

4.    Plaintiffs Scott and Virginia Walsh and V.W. reside in the County of Saratoga, State of New York.

5.    Plaintiffs reside within the territorial jurisdiction of the Shenendehowa Central School District.

6.    Defendant Dr. John B. King, Jr. is the Commissioner of the New York State Education Department.

7.    Defendant King maintains offices at 89 Washington Avenue, Albany, New York 12234.

8.    Defendant Justyn P. Bates is the State Review Officer employed by the New York State Education Department.

9.    Defendant Bates maintains offices at 80 Wolf Road, Albany, New York 12205.

10.   Defendant Board of Education of the Shenendehowa Central School District ("District") is a local educational agency as defined by IDEA, 20 U.S.C. § 1401(19), and, as such, is obligated to provide educational and related programs and services to its students in compliance with the applicable federal and State statues, Regulations and the United States Constitution, and is subject to the requirements of 20 U.S.C. § 1400 et seq. and the Regulations promulgated thereby at 34 CFR Part 300.

11.   Defendant District's administrative offices are located in the County of Saratoga at 5 Chelsea Place, Clifton Park, New York 12065.

## JURISDICTION AND VENUE

12.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13.     Venue is appropriate in the Northern District of New York pursuant to 28 U.S.C. § 1391(b) based upon the location of Plaintiffs and Defendants and based upon the subject matter of this action.

## THE ADMINISTRATIVE REVIEW PROCESS

14.     IDEA's purpose is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designated to meet their unique needs and prepare them for further education, employment and independent living" and "ensure that the rights of children with disabilities and their parents are protected." *See* 34 CFR § 300.1(a), (b).

15.     In order to ensure the protection of these goals, IDEA provides administrative procedures for a parent to request an impartial due process hearing relating to the identification, evaluation or educational placement of a child with a disability, or the provision of a free appropriate public education (referred to as "FAPE") to the child.

16.     Under IDEA, each State may elect to conduct impartial hearings at the state level (a "one-tier state") or to conduct the impartial hearings by an impartial hearing officer ("IHO") at the local educational agency level with the right to a state-level review of the IHO's decision (a "two-tier state"). *See* 20 U.S.C. § 1415(f), (g).

17.     New York State is a "two-tier state" and the state-level review is conducted by a state review officer ("SRO") employed by the New York State Education Department.

18.     Since on or about January 2011 most decisions handed down by the New York state review officers were signed by Defendant Justyn P. Bates.

19.     Under federal regulations, in a two-tier state, "[t]he [state educational agency] must ensure that not later than 30 days after the receipt of a request for a review....(1) [a] final

decision is reached in the review; and (2) [a] copy of the decision is mailed to each of the parties." 34 CFR § 300.515(b).

20.     The New York State implementing regulations provide that "[t]he State review officer must ensure that, not later than 30 days after the receipt of a request for a review, a final decision is reached and a copy of the written decision, or at the option of the parents, electronic findings of fact and the decisions, is mailed to each of the parties, except that a State Review Officer may grant specific extensions of time beyond the periods set out in this paragraph at the request of either party.  The reason for the extension must be documented in the record."  8 N.Y.C.R.R. § 200.5(k)(2).

21.     After the issuance of a decision upon state-level review, an aggrieved party has the right to initiate a civil action for judicial review of the administrative decision. *See* 20 U.S.C. § 1415(i).

22.     In order to be entitled to judicial review, an aggrieved party ordinarily must exhaust administrative remedies, including receiving a decision from the State Review Officer.

23.     Upon information and belief, Defendants King and Bates have a significant backlog of undecided cases awaiting state-level review.

24.     Upon information and belief, an action *J.F. et al. v. King et al.* (13-CV-5914) was commenced against Defendants King and Bates, along with other named defendants, on or about August 21, 2013 for relief from a small portion of undecided cases awaiting state-level review.

25.     Upon information and belief, as a result of *J.F. et al. v. King et al.*, *inter alia* the United States Department of Education began oversight of the New York Office of State Review and Defendants King and Bates acknowledged the backlog of cases and violations of federal and State law and, further, Defendants King and Bates represented that the backlog of cases cannot

4

be decided within the next one (1) year and, therefore, requested a longer period to decide the backlog of undecided cases awaiting state-level review.

26.     Upon information and belief, the lawsuit *J.F. et al. v. King et al.* is moot as of the date of this Complaint because Defendant Bates and New York Office of State Review purposefully issued hasty decisions making plaintiffs' claims moot. *J.F. et al. v King et al.*

## FACTUAL BACKGROUND

27.     V.W.'s date of birth is December 16, 1997.

28.     V.W. is a multiply disabled student with an extensive history of global developmental delays. V.W. was initially diagnosed with FG syndrome, a diagnoses later called into question but she displays many of the physical anomalies associated with that disorder.

29.     Since early in her life, V.W. has required services for developmental delays, language delays, motor deficits, attentional and learning problems as well as social emotional delays.

30.     In 2004, V.W.'s intellectual abilities were measured to be in the mildly deficient range.

31.     In a Neuropsychological Evaluation performed of V.W. in December 2005, it was noted that she struggled with balance, coordination, strength and motor planning as well as showing deficits in both receptive and expressive language skills along with a long-standing history of attention and behavioral regulation difficulties.

32.     In an evaluative update conducted by the same Neuropsychologist in October 2009, it was noted that V.W. was experiencing problems with mood and obsessive behaviors, had significant problems with motor functioning and it was again noted that V.W.'s verbal and non-verbal intellectual abilities fell within the mild to moderate range of mental retardation.

5

33.     In a 2012 administration of the WISC-IV IQ test, it was noted that V.W.'s verbal comprehension and perceptual reasoning indices have risen showing that she has unaddressed academic potential.

34.     For the 2007-2008 school year, V.W., as a third grade student, was placed in a District 12:1:2 "academic needs-intermediate" program.

35.     In December of 2007 an outside consultant, Dr. Kate Murray, found that V.W. was working at a first grade reading level as well as a first grade math level.  Dr. Murray also suggested some strategies that were not incorporated on V.W.'s Individualized Education Program (" IEP").

36.     In March of 2008 a District Summary showed that V.W. had very poor community self-sufficiency and personal-social responsibility scores, as well as poor personal adjustment scores.

37.     At a Committee on Special Education ("CSE") meeting on September 22, 2008, an Individualized Education Program ("IEP") was developed for VW for the 2008-2009 school year which proposed that V.W. be included with typical peers for lunch, recess, specials, field trips, special curriculum-related programs, and selected hands-on activities in Science and Social Studies as well as recommending that she receive the following: special class language arts in a 15:1:1 setting, 5 times per week, 60 minutes per session; special class math in a 15:1:1 setting, 5 times per week, 45 minutes per session; special class reading in a 15:1:1 setting,  5 times per week, 60 minutes per session; counseling/social work services, 1 time per month, 30 minutes per session; occupational therapy, 2 times per week, 30 minutes per session, 1 session in a therapy room and 1 session in a special education classroom; a shared aide 5 times per week, 3 hours 15 minutes per day; and, speech language therapy, 3 times per week, 30 minutes per session in a 5-1

grouping and speech language therapy 1 time per week, 30 minutes per session in an individual setting.

38.     The District's CSE met on February 25, 2009 to propose an IEP for V.W. for the 2009-2010 school year which included placement in a "Links" program for 4 hours 15 minutes per day along with counseling/social worker services, 1 time per week, 30 minutes per session; occupational therapy consultation, 1 time per month, 15 minutes per consult; speech language therapy, 3 times per week, 30 minutes per session in a 5-1 setting; and speech language therapy, 1 time per week, 30 minutes per session individually.   The Occupational Therapist had recommended a Slant Board which was not included on the IEP.

39.     In its 2009-2010 IEP the District significantly cut V.W.'s occupational therapy services without an evaluation and notwithstanding her significant need for such services.

40.     Without any further testing, the District inappropriately eliminated V.W.'s individualized speech language therapy session on November 13, 2009.

41.     The District performed speech language testing in March 2010.  V.W. scored significantly lower than age mates in the area of language and it was recommended that continued speech services be offered V.W. upon entrance into the middle school.

42.     At a CSE meeting held on April 1, 2010, V.W. was denied an appropriate reading program and an IEP was proffered for the 2010-2011 school year without the occupational therapy and physical therapy services she needed, with an inappropriate amount of speech language therapy and recommending that V.W. receive the following:   placement in a "functional academic skills class", 12:1:3 for 6 hours per day; adaptive physical therapy, 5 sessions every 2 weeks, 40 minutes per session; social skills training, 1 time per week, 30

minutes per session in a 5-1 grouping; and speech language therapy, 2 times per week, 40 minutes per session in a 5-1 grouping.

43.     After 2 years of requesting the District provide V.W. with Wilson Reading, to address V.W.'s significant reading deficits, the Parents provided V.W. with Wilson Reading tutorial and continued to request the District likewise provide V.W. with a Wilson Reading program, a service the District refused to provide V.W.

44.     V.W. continued to struggle in all academic areas through the 2010-2011 school year and it was not until approximately January 18, 2011 that "special class reading" was added to her IEP to meet every other day, 14 minutes per session in a group of 15 students.

45.     The Parents were paying for outside reading tutorial.

46.     Since the 2010-2011 school year the District has offered but 2 programs for V.W. one of which is not challenging enough and the other which is beyond her capabilities.  Since the 2010-2011 school year, V.W. has been placed in classes that do not provide her the appropriate peer social interaction from which she will benefit.

47.     Since the 2010-2011 school year V.W. has developed anxiety regarding school attendance, due, in part, to difficult social interactions unaddressed by the District.

48.     The District did not offer an appropriate program for V.W. for the summer of 2011.

49.     At an April 1, 2011 CSE meeting an IEP for the 2011-2012 school year was offered to V.W. which proposed that she be placed in a "functional skill development" 12:1+4 class for 6 hours per day as well as special class reading every other day 40 minutes per session along with speech language therapy 2 times per week, 30 minutes per session in the classroom in a small group setting.

50.    The District's proposed IEP for the 2011-2012 school year did not provide the services needed in order to develop a program from which V.W. would benefit.

51.    During the 2011-2012 school year V.W. was denied the occupational therapy services, physical therapy services, adequate assistive technology services, as well as the counseling services she needed in order to adequately participate in a school setting.

52.    During the 2011-2012 school year V.W. was in a setting which did not foster appropriate peer relationships.

53.    During the 2011-2012 school year V.W. was not provided adequate speech language services.

54.    During the 2011-2012 school year V.W. did not make academic progress.

55.    The CSE met on April 29, 2011 and did not have all the appropriate and mandated members present.

56.    By letter dated September 12, 2011 the Parents wrote the District's Special Education Administrator requesting a Full CSE Meeting and clearly articulating that V.W. needed additional reading assistance, that occupational therapy should be reinstated, that V.W. needed a certified vision therapist, that V.W. would benefit from counseling services provided her through social work and that she needed to learn computer skills.

57.    Upon information and belief non-disabled 6th grade students were provided a computer class which V.W. was denied.

58.    Notwithstanding the Parent's request for a Full CSE Meeting the District's CSE did not reconvene as required.

59.    The District continued to deny V.W. the social work services, vision services, Occupational Therapy services, computer training and a certified math teacher needed by her.

60.    The District never provided the Parents with a finalized IEP for the 2011-2012 school year.

61.    The draft IEP provided the Parents did not contain appropriate goals and objectives.

62.    During the 2011-2012 school year V.W.'s reading skills regressed.

63.    During the 2011-2012 school year V.W. continued to struggle with math and did not receive the assistance she needed.

64.    At a CSE meeting on February 16, 2012, it was agreed that the District would provide V.W. with books on tape, an occupational therapy evaluation, assisted technology evaluation, an evaluation of its recently implemented "180" Reading Program, a math evaluation, and provide V.W. with a list of clubs at school in which she could participate.

65.    The District did not follow through on most of the promises it made at the February 16, 2012 CSE meeting.

66.    The District did not provide V.W. any math services for approximately 2 months during the 2011-2012 school year.

67.    Notwithstanding Parental requests over a two year period, the District did not provide V.W. with homework during the 2011-2012 school year.

68.    Notwithstanding its promises, the District did not provide V.W. with books on tape nor did it provide her with a list of clubs at the school.

69.    Sometime in the spring of 2012 the District performed an inappropriate "reevaluation summary".

70.    Acknowledging the inappropriateness of its own evaluation the District performed a "reevaluation summary addendum" later in the spring of 2012 which remained an inappropriate and inadequate evaluation of V.W..

71.    The District performed a wholly inadequate Occupational Therapy evaluation dated April 18, 2012 and, notwithstanding that "formal testing indicates very low visual motor integration skills", using an inappropriate legal standard the therapist concluded that therapy services were not warranted for V.W..

72.    The OT evaluation dated April 2012 is inappropriate and did not adequately test V.W. in the areas of need nor did the evaluator make appropriate recommendations.

73.    The CSE met on April 27, 2012, without all mandated members present, at which the District proposed an IEP for the 2012-2013 school year and once again offered V.W. an inappropriate program.

74.    The IEP proposed at the April 27, 2012 CSE meeting proposed that V.W.'s speech language therapy be further cut back and continued to deny the occupational therapy services needed by V.W..

75.    The goals and objectives proposed in the 2012-2013 school year are inappropriate for V.W. and were unrelated to her real needs.

76.    The proposed 2012-2013 IEP for V.W. did not have adequate assistive technology assistance nor assistive technology goals.

77.    The District did not propose appropriate programming for V.W. for the summer of 2012.

78.     The Districts CSE reconvened on June 6, 2012 and again proposed an inappropriate IEP for V.W.. At the June 6, 2012 meeting the District insisted that speech services be provided V.W. according to its "model" not in accord with her needs.

79.     At the June 6, 2012 CSE meeting the District proposed that V.W. be placed in mainstream Science and Social Studies classes, without the assistance of the direct consultant teacher services of which she was in dire need in order to be successful in those classes.

80.     The District did not propose appropriate social skills group or services for V.W. for the 2011-2012 and 2012-2013 school years.

81.     The CSE did not propose appropriate assistive technology services for V.W. for the 2012-2013 school year nor any goals for assistive technology.

82.     The District did not propose to provide V.W. with the Occupational Therapy services needed by her for the 2012-2013 school year.

83.     The District did not propose an appropriate summer 2012 program for V.W.

84.     The Parents never received a finalized IEP for the 2012-2013 school year.

85.     The Parents were excluded from any participation in creating goals for V.W.'s 2012-2013 school year.

86.     At Parental insistence, a Neuropsychological Reevaluation was performed on V.W. towards the end of August 2012.

87.     Dr. Zuffante's Neuropsychological Reevaluation found that V.W.'s academic skills were well below age and grade level expectations and that her oral reading fluency was at the late first to second grade level.

88.     Dr. Zuffante's 2012 Reevaluation found that V.W.'s reading comprehension was at the early first grade level.

12

89.    Dr. Zuffante's 2012 Reevaluation found that V.W.'s written expression ranged from early first grade to early fourth grade level but that spelling was in the borderline range.

90.    Dr. Zuffante's 2012 Reevaluation found that V.W.'s math grade equivalent was at the late first to early second grade level.

91.    Dr. Zuffante's 2012 Reevaluation found that V.W. has a long-standing history of deficits in the area of visual, perceptual, fine motor and visual motor integration skills.

92.    Dr. Zuffante's 2012 Reevaluation found that V.W. has difficulty with visual motor skills.

93.    The District received a copy of Dr. Zuffante's Reevaluation and adamantly refused to provide the academic services, related services, accommodations and modifications recommended by Dr. Zuffante.

94.    The District's CSE reconvened on November 29, 2012 to review Dr. Zuffante's recommendations and even with that evaluation the CSE denied V.W. the social skills assistance she needed, denied V.W. appropriate assistive technology assistance and devices she needs, denied V.W. an appropriate reading program, denied V.W. an adequate amount of the speech and language therapy she needed, continued to deny V.W. the occupational therapy services she needed, continued to inadequately address V.W.'s reading, writing and math deficits which, in effect, denied V.W. the Free Appropriate Public Education ("FAPE") to which she was entitled.

95.    V.W. made little, if any, academic gains during the 2012-2013 school year.

96.    V.W. continued to suffer from her inappropriate placement in that she had few, if any, appropriate peer interactions during the 2012-2013 school year.

97.    V.W. suffered and was denied access to educational benefits through the District's refusal to provide her with occupational therapy and physical therapy services.

13

98.     During the 2012-2013 school year V.W.'s reading skills declined.

99.     During the 2012-2013 school year V.W. did not receive the homework assignments requested by her and her Parents, nor did she receive appropriate assistive technology assistance.

100.    The District's CSE met for an annual review on May 14, 2013 in order to propose an IEP for V.W. for the 2013-2014 school year.

101.    At the May 14, 2013 meeting the District inappropriately proposed summer services for V.W. that only included a special class (Functional Skills Development), in a 12:1:4 setting, 5 times a week, 5 hours 30 minutes per session and speech/language therapy, 30 minutes per week.

102.    The District's CSE proposed an inappropriate summer program for V.W. and, as a result, her Parents unilaterally placed her in the Riverview School for summer programming for 2013.

103.    For V.W.'s 2013-2014 school year the District's CSE proposed that V.W. receive the following: special class reading in a 12:1:1 setting, 5 times a week, 40 minutes per session; adaptive physical education in a 15:1 setting, 5 times every two weeks, 40 minutes per session; special class 12:1:1, 5 times per day, 40 minutes per session for all of her academic areas; speech/language therapy in a small group setting, 2 times per week, 30 minutes per session; and, OT consults 8 times yearly, 15 minutes per session.

104.    V.W.'s proposed IEP for the 2013-2014 school year neglected to provide her the specific services she needed, namely occupational therapy services, physical therapy services, assistive technology services, adequate speech and language services and the counseling services she needed in order to benefit from her education.

14

105. V.W.'s IEP for the 2013-2014 school year continued to deny her the social skills assistance she needed, denied her the appropriate assistive technology assistance and devices that she needed, continued to deny V.W. an appropriate reading program, continued to deny V.W. an adequate amount of speech and language therapy, continued to deny V.W. the occupational therapy services she needed, continued to inadequately address V.W.'s need for homework, continued to deny V.W. appropriate measurable goals and objectives, continued to inadequately address V.W.'s reading, writing and math deficits which, in effect, continued to deny V.W. the FAPE to which she was and remains entitled.

106. During the latter part of the 2010-2011 school year, the entire 2011-2012, 2012-2013 and 2013-2014 school years V.W. was discriminatorily denied an appropriate education and has suffered, and will continue to suffer extensive, inappropriate and illegal programing from the District in violation of the IDEA and Section 504.

107. Upon information and belief, the District provides its non-disabled resident students with appropriate programs and services, programs and services which have been denied V.W.

108. Upon information and belief, the District provides its other disabled students with appropriate programs and services, programs and services which have been denied V.W.

109. The District has not performed adequate evaluations of V.W.

110. The District alters V.W.'s program and services without new evaluative information.

111. V.W. has not received appropriate educational services from the District.

112. V.W. has not received appropriate related services and therapies from the District.

15

113. The Parents have thoroughly cooperated with the District and met every obligation required by the District of them.

114. Throughout the 2010-2011, 2011-2012 and 2012-2013 school years at each and every CSE meeting attended by the Parents, including the CSE meeting planning for V.W.'s 2013-2014 school year, the CSE has predetermined the outcome and did not afford the Parents an opportunity to be true members of the CSE team developing V.W.'s program.

115. Almost every suggestion by the Parents at CSE meetings has been ignored by the District's CSEs.

116. The CSE continually met without all the appropriate and mandated members present.

117. Through its predetermination of IEP outcomes, not having all mandated members present, not providing the Parents with finalized IEPs, the District has violated V.W.'s and the Parents' procedural due process rights, and, as such, has denied a substantive program from which V.W. would benefit.

118. In any and all dealings with the District the Parents and V.W. have not been afforded adequate opportunity for input and, as such, have been denied procedural rights, which significantly affect the substantive program offered by the District and has resulted in the District providing V.W. programming for the latter part of the 2010-2011, the entire 2011-2012 and 2012-2013 school years which are not appropriate and in violation of the IDEA and Section 504.

119. V.W.'s program and placement for the 2013-2014 school year was not appropriate and violated the IDEA and Section 504.

16

120.   The denial of V.W.'s substantive rights has resulted in a gross denial of educational opportunities and has resulted in significant educational damage to V.W. in violation of the IDEA and Section 504.

121.   During the latter part of the 2010-2011, the entire 2011-2012, 2012-2013 and 2013-2014 school years the District failed to conduct and review appropriate evaluations in all areas of V.W.'s suspected disabilities.

122.   V.W. has made no academic progress in the programs proffered by the District and additionally, her social skills have diminished and she has not been afforded the necessary assistance that would have or will allow her to adequately participate in extracurricular activities.

123.   The District's IEPs do not contain the requisite data identifying V.W.'s present levels of performance.

124.   The program and related services that V.W. has been receiving during the latter part of the 2010-2011 school year, the entire 2011-2012, 2012-2013  and 2013-2014 school years are inappropriate, inadequate and inconsistent with the available data, evaluations and observations in violation of the IDEA and Section 504.

125.   The District has acted in bad faith and has consistently failed to implement an appropriate program for V.W. for the latter part of the 2010-2011 and the entire 2011-2012 2012-2013 school years in violation of the IDEA and Section 504.

126.   The District has acted in bad faith and neglected to propose and implement an appropriate program for V.W. for the 2013-2014 school year in violation of the IDEA and Section 504.

127.   V.W. has been the victim of significant discrimination by the District as, upon information and belief, District non-disabled students are provided an appropriate education and

17

afforded opportunities to participate in extracurricular activities and, as such, the District has manifested bad faith and/or gross misjudgment regarding V.W. in violation of the IDEA and Section 504.

128.    In addition to not providing appropriate educational services and/or appropriate related services the District has not crafted appropriate goals and objectives for V.W. for the 2010-2011, 2011-2012, 2012-2013 and 2013-2014 school years.

129.    The Parents have visited a number of local alternative programs in the geographical area and have found no programs that would meet V.W.'s complex needs.

130.    The Parents and V.W. have visited a residential program, namely the Riverview Program in East Sandwich, Massachusetts and believe that it is a program from which V.W. would benefit and that she needs an immediate residential placement threeat. V.W. has been accepted to this school.

131.    V.W. has made *de minimus* progress in her academic skills or therapeutic areas of need in all the years she has been in the District's programs and placements.

132.    V.W. attended the Riverview School Summer Program (hereinafter "Riverview Summer Program"), beginning on July 7, 2013. The program ran from July 2013-August 2013.

133.    During her summer at the Riverview School, V.W. developed her skills and demonstrated marked gains in each area addressed.

134.    V.W. has not received adequate physical therapy through the District.

135.    V.W. received strengthening exercises at Riverview and benefitted for these exercises. For example, after attending the Riverview program, V.W.'s balance improved.

136.    V.W.'s reading skills were still at the first grade level after many years of District programming.

18

137.   After attending the Riverview Summer Program, V.W. was interested in new and different topics and reading material.   V.W. also asked many more questions about her observations of the world around her and exhibited curiosity and interest.

138.   After attending the Riverview Summer Program, V.W. had a love for reading. VW was excited to read at night when she first came home from the Riverview program.

139.   V.W. has not received appropriate and/or adequate speech therapy from the District.

140.   After attending the Riverview Summer Program, V.W.'s conversational skills improved tremendously.   V.W. was unhindered in conversation and was more comfortable speaking and expressing herself.

141.   V.W.'s vocabulary increased and she used new words appropriately.   She also had improved articulation.

142.   When V.W. first returned from the Riverview Summer Program, she had telephone conversations with friends from Riverview.   Her speech on the telephone improved and she was comfortable speaking with a variety of topics on the phone.

143.   Since returning to the District's program in September 2013 and its limited speech therapy offerings to V.W., V.W. has difficulty carrying on a conversation and demonstrates a general regression in her speech skills.

144.   V.W.'s social skill deficits and social isolation have not been adequately addressed by the District.

145.   Before attending the Riverview Summer Program, V.W. was socially isolated. V.W. was very discouraged and sad because she didn't have any friends.

19

146.    Before attending the Riverview Summer Program, V.W. watched a lot of TV and would play on the computer often because she didn't have friends to play with and because she did not have opportunities for social interaction with peers.

147.    While at the Riverview Summer Program, V.W. was in a dorm with approximately eight (8) other students.  V.W. had a roommate.

148.    After the Riverview Summer Program, V.W. exhibited a sense of freedom and was able to be the person she truly is.  V.W. grew socially and was content and confident.

149.    Upon information and belief, while at Riverview, V.W. did not watch TV (other than an occasional movie) and was provided with a wealth of social activities.

150.    V.W. has not been integrated into extracurricular activities in the District and has not been afforded the support and accommodations she needs in order to participate in such activities.

151.    While at Riverview, V.W. lost approximately 20lbs due to activities provided at Riverview and exercise opportunities.

152.    In the first 3-4 weeks after the Riverview Summer Program, V.W. was independent at home, she was more excited about getting involved in activities at home and she was capable of verbalizing her needs and her emotions (instead of getting emotional and internalizing frustration).

153.    Because of the Riverview Summer Program, V.W. has a friend.  They have a healthy relationship that they have maintained since V.W. left Riverview.  They speak regularly on the telephone and see each another occasionally.

154.    Since returning to the District's program, V.W. eats frequently and watches much TV.  V.W. is less active and is uninterested in activities.  V.W. often says "I want be with somebody. I want to go play with somebody.  I don't have any friends."

155.    V.W. has not received the assistive technology support she needs while in the District's programs.

156.    Prior to attending the Riverview Summer Program, V.W. had trouble typing, particularly with key usage and visual aspects of using a computer.

157.    During the Riverview Summer Program, V.W. learned how to e-mail friends; she learned to compose letters and respond appropriately in writing.

158.    Computer skills, which have not been addressed by the District, are one of V.W.'s strengths and V.W. was able to develop her skills during the Riverview Summer Program.

159.    After she attended the Riverview Summer Program, there was a huge improvement in V.W.'s keyboarding skills and appropriate hand placement.  In addition, V.W. learned to print the correct number of copies and developed the skills to determine what to print and when printing is appropriate.

160.    V.W.'s success is dependent on a proper educational placement.  The Riverview School is an appropriate educational program for V.W. and will provide her educational and social benefits she does not receive in District programs.

161.    As a result of the District's failures, Plaintiffs' challenged the District's educational program for V.W. for the 2010-2011, 2011-2012 and 2012-2013 school years.

162.    On or about December 21, 2012, Plaintiffs filed and served their Demand for Due Process Hearing ("DDP") pursuant to the Individuals with Disabilities Education Act, as amended 20 U.S.C. § 1400 et seq. ("IDEA") and the Regulations promulgated thereby at 34 CFR

21

Part 300, Article 89 of the New York State Education Law § 4401 et seq. (Article 89) and the Regulations promulgated thereby at 8 NYCRR Part 200 and the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and the Regulations promulgated thereby at 34 CFR Part 104.

163.     On or about January 7, 2013, the District answered Plaintiffs' DDP.

164.     On or about May 29, 2013, Plaintiffs' filed and served an Amended DDP likewise contesting the District's proposed IEP for V.W. for the 2013-2014 school year.

165.     Plaintiffs requested that the IHO: (1) order the District immediately provide V.W. with an appropriate program, namely a placement in the Riverview School; (2) order that V.W. receive appropriate occupational therapy services; (3) order that V.W. receive appropriate speech language services; (4) order that V.W. receive appropriate assistive technology services and appropriate assistive technology devices; (5) order that V.W. receive appropriate summer programming including payment for or reimbursement to the Parents for V.W.'s placement at Riverview for the summer of 2013 and, to the extent that she was denied such programming during the 2011 and 2012 school years that she receive compensatory programming at the Riverview School for the education and related services lost thereby; (6) order and that V.W. receive compensatory services for each and every related service and educational program lost during the 2010-2011, 2011-2012 and 2012-2013 school years in which she was not afforded appropriate occupational therapy services, physical therapy services, speech services, assistive technology services, reading programs, writing programs, math programs and social skills opportunities; (7) determine that V.W. has been discriminated against on the basis of her disability, and that her Constitutional and statutory rights to an appropriate education have been denied and that she has suffered considerable and significant damages thereby; (8) determine that

V.W. is entitled to an appropriate education and must be immediately placed in an appropriate program such as the Riverview School; (9) award monetary damages as a result of the District's discrimination against V.W; (10) award attorney's fees and all other and further relief that the IHO deems appropriate.

166.    On or about June 7, 2013, the District answered Plaintiffs' Amended DDP.

167.    The District appointed Mindy Wolman as the Impartial Hearing Officer ("IHO").

168.    A hearing was held before IHO Wolman on June 10, 11, 12, 13, 2013 and July 8, 9 and 30, 2013.

169.    Thereafter, IHO Wolman issued a decision dated December 13, 2013 and a corrected decision dated December 18, 2013.

170.    IHO Wolman's decision found in favor of Plaintiffs and found FAPE violations for all relevant school years, including 2013-2014.

171.    IHO Wolman's decision directed the District to, *inter alia*, immediately place V.W. in the Riverview School residential program and fund placement for the 2013-2014 school year and directed the District to reimburse Plaintiffs for tuition costs for V.W.'s placement at the Riverview School during the Summer of 2013.

172.    V.W. was not placed at the Riverview School for the 2013-2014 school year and Plaintiffs did not receive any reimbursement from the District.

173.    On or about January 21, 2014, the District appealed the IHO's decision to the New York State Review Officer ("SRO").

174.    On or about January 31, 2014, Plaintiffs filed and served an Answer and Cross-Appeal and Memorandum of Law to the SRO, along with Affidavits from Riverview School

personnel Lauren Kalita, Renee Czaplicki and Mary Beth Thacher, and an Affidavit of Virginia Walsh (one of the Plaintiffs, herein, and V.W.'s mother), sent by letter to the SRO.

175.   On or about February 10, 2014, the District filed and served an Answer to Plaintiff's Cross-Appeal.

176.   Thereafter, on or about February 19, 2014, Plaintiffs filed and served a Reply to the District's Answer to the Cross-Appeal and Response to the District's request to submit additional evidence.

177.   The SRO has not rendered a decision on the District's Petition or the Plaintiffs' Cross-Appeal

178.   As of the date of this Complaint, no decision has been issued from the Office of State Review and neither party to the appeal has requested an extension of time for a decision to be rendered.

179.   To date, V.W. has not been placed at the Riverview School, as directed by the IHO.

180.   To date, Plaintiffs have not received tuition reimbursement or any other relief, including the related services V.W. so desperately needs, awarded by the IHO.

## AND AS FOR A FIRST CAUSE OF ACTION

181.   Plaintiffs repeat and reallege paragraphs 1 through 180 as though fully set forth herein.

182.   Defendant District has requested review of IHO Wolman's Decision by the State Review Officer and has continued to deprive V.W. of the placement and services she so desperately needs in order to receive the appropriate education to which she is entitled.

24

183. More than thirty (30) days have passed since the request to the SRO for review and no decision has issued.

184. Defendants King and Bates are in violation of the IDEA and its implementing regulations in failing to issue a timely decision.

185. Defendants King and Bates are in violation of New York State Education Law and its implementing regulations in failing to issue a timely decision.

186. Plaintiffs' procedural rights have been violated by Defendants King and Bates under IDEA, the regulations thereunder, Article 89 of the New York State Education Law, and the Regulations of the New York State Commission of Education, Part 200.

187. Plaintiffs' substantive rights have been violated by Defendants King and Bates under IDEA, the regulations thereunder, Article 89 of the New York State Education Law, and the Regulations of the New York State Commission of Education, Part 200.

## AS AND FOR A SECOND CAUSE OF ACTION

188. Plaintiffs repeat and reallege paragraphs 1 through 187 as though fully set forth herein.

189. Defendant District has requested review of IHO Wolman's Decision by the State Review Officer and has continued to deprive V.W. of the placement and services she so desperately needs in order to receive the appropriate education to which she is entitled.

190. More than thirty (30) days have passed since the request to the SRO for review and no decision has issued.

191. Defendants King and Bates are in violation of the IDEA and its implementing regulations in failing to issue a timely decision.

25

192.    Defendants King and Bates are in violation of New York State Education Law and its implementing regulations in failing to issue a timely decision.

193.    The delay in issuing a decision has prejudiced Plaintiffs and is causing V.W. irreparable harm.

194.    Plaintiffs respectfully request that the Court deem the IHO's Decision, and the relief awarded therein, final.

## AND AS FOR A THIRD CAUSE OF ACTION

195.    Plaintiffs repeat and reallege paragraphs 1 through 194 as though fully set forth herein.

196.    Plaintiffs' procedural rights have been violated by Defendant District under IDEA, the regulations thereunder, Article 89 of the New York State Education Law, and the Regulations of the New York State Commission of Education, Part 200.

197.    Plaintiffs' substantive rights have been violated by Defendant District under IDEA, the regulations thereunder, Article 89 of the New York State Education Law, and the Regulations of the New York State Commission of Education, Part 200.

198.    Defendant District, as found by the IHO has failed to offer to provide V.W. a FAPE for part of the 2010-2011, and the entire 2011-2012, 2012-2013 and 2013-2014 school years.

199.    The Riverview School offers an educational program that meets V.W.'s special education needs.

200.    V.W. should be immediately placed by the NYSED and the District at the Riverview School at the District's expense.

## AS AND FOR A FOURTH CAUSE OF ACTION

26

201.   Plaintiffs repeat and reallege paragraphs 1 through 200 as though fully set forth herein.

202.   Plaintiffs' rights have been violated under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and its implementing regulations.  The District was required to evaluate and appropriately place V.W. who, because of disability, needs, special education and related services, in an institution that is appropriate for her needs.

203.   As demonstrated above, the District failed to evaluate and properly place V.W. in the appropriate educational setting discriminated against her and, further, refused to abide by IHO Wolman's Decision and Order.

204.   Plaintiffs are entitled to compensatory and monetary relief from the District for these separate violations, including tuition at the Riverview School if not otherwise available under the IDEA.

## AS AND FOR A FIFTH CAUSE OF ACTION

205.   Plaintiffs repeat and reallege paragraphs 1 through 204 as though fully set forth herein.

206.   Defendant District requested review of IHO Wolman's Decision by the State Review Officer but continued to deprive V.W. of the placement and services she so desperately needs in order to receive the appropriate education to which she is entitled.

207.   More than thirty (30) days have passed since the request to the SRO for review and no decision has issued.

208.   The District has not complied with the IHO's Decision and has not provided any of the relief awarded to Plaintiffs by the IHO.

209.   Defendant District has violated the IHO's Decision and award of relief.

210.    Plaintiffs respectfully request that the District be ordered to comply with the IHO's Decision and Order and provide all relief awarded to Plaintiffs in that Decision and Order.

## AND AS FOR A SIXTH CAUSE OF ACTION

211.    Plaintiffs repeat and reallege paragraphs 1 through 210 as though fully set forth herein.

212.    Any decision by Defendant Bates or the New York Office of State Review upon the District's Petition currently pending before the SRO would be in retaliation for commencement of the instant action.

213.    Plaintiffs respectfully request that Defendant Bates be enjoined from issuing a decision in the District's Petition currently pending before the SRO or Office of State Review.

## AND AS FOR A SEVENTH CAUSE OF ACTION

214.    Plaintiffs repeat and reallege paragraphs 1 through 213 as though fully set forth herein.

215.    Should the Defendant District appeal the IHO Decision and Order in United States Federal Court pursuant to 20 U.S.C. § 1415(i) the IHO's Decision and Order must be declared to be pendency for the entirety of any litigation between these parties and/or litigation concerning the educational placement and programs for V.W.


WHEREFORE, Plaintiffs respectfully request this Court award the following relief:

    a.    Assume jurisdiction over this action;

    b.    Judgment that Defendants King and Bates are in violation of IDEA and New York State Education Law and the respective implementing regulations in failing to ensure that state-level decisions are issued in a timely manner;

28

c.     Enter preliminary and thereafter permanent injunctive relief enjoining Defendant Bates and/or the New York State Office of State Review from issuing a decision in the District's Petition dated January 21, 2014, currently pending before Defendant Bates and/or the New York State Office of State Review;

d.     Judgment that IHO Wolman's dated December 13, 2013 and corrected on December 18, 2013 is final;

e.     Judgment that Defendant District be ordered to comply with IHO Wolman's Decision and Order dated December 13, 2013 and corrected on December 18, 2013 and provide all relief awarded to Plaintiffs;

f.     Judgment declaring IHO Wolman's Decision and Order dated December 13, 2013 and corrected on December 18, 2013 to be pendency should the District choose to appeal this matter to this Court or any court of competent jurisdiction;

g.     Enter preliminary and thereafter permanent injunctive relief enjoining Defendant District from not complying with IHO Wolman's Decision and Order dated December 13, 2013 and corrected on December 18, 2013 and providing all relief award to Plaintiffs;

h.     Enter preliminary and thereafter permanent injunctive relief requiring Defendant District to immediately place Plaintiff V.W. at the Riverview School at NYSED and Shenendehowa Central School District's expense;

i.     Otherwise grant the relief sought in Plaintiffs' Amended Demand for Due Process dated May 23, 2013;

j.     Declare that Defendants abridged the Plaintiffs' due process rights;

k.     Award Plaintiffs appropriate monetary damages for violations of V.W.'s Constitutional and education rights;

l.     Order immediate reimbursement of tuition and all other educationally related costs associated with V.W.'s placement at the Riverview School for the summer of 2013;

m.     Grant full reimbursement for all educationally related expenses accrued by Plaintiffs which should have been paid for by the Defendant District;

n.     Award Plaintiffs costs, expenses and attorneys' fees for the administrative proceedings pursuant to 20 U.S.C. § 1415;

o.   Award Plaintiffs costs, expenses and attorneys' fees for this action pursuant to 20 U.S.C. § 1415 and/or Section 1988 of the Civil Rights Act;

p.   Order such other and further relief as the Court deems just and proper.

Dated: September 2, 2014
       Albany, New York

Respectfully submitted,

Kenneth S. Ritzenberg, Esq.
Bar Roll No. 505277
Young Sommer Ward Ritzenberg
Baker & Moore LLC
5 Palisades Drive, Suite 300
Albany, New York 12205
(518) 438-9907 (telephone)
(518) 439-9914 (fax)