UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SCOTT AND VIRGINIA WALSH, individually and
on behalf of V.W., a child with a disability,

                Plaintiffs,               Civil Case No:
                                      1:14-CV-1078 (LEK/RFT)

    -against-

DR. JOHN B. KING, JR., as Commissioner of Education
of the New York State Education Department,
JUSTYN P. BATES, as State Review Officer, and the
BOARD OF EDUCATION of the SHENENDEHOWA
CENTRAL SCHOOL DISTRICT,

                Defendants.


# MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

September 9, 2014

FERRARA FIORENZA LARRISON
BARRETT& REITZ, P.C.
Attorneys for Shenendehowa CSD
Susan T. Johns, Esq., of Counsel
5010 Campuswood Drive
East Syracuse, New York   13057
(315) 437-7600

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS..........................................................................................1

POINT I
    PLAINTIFFS FAIL TO MEET THEIR BURDEN FOR A TRO/
    PRELIMINARY INJUNCTION ....................................................................4

        Applicable Standard...............................................................................4

        Plaintiffs Fail to Show a Likelihood of Success .....................................7

           1.  Plaintiffs Failed to Exhaust Their Administrative Remedies ...........7

        Plaintiffs Fail to Prove That There is a Likelihood That They Will Prevail
        Before the SRO .....................................................................................9

        The IHO's Holding that the 2013-2014 IEP did not Provide a FAPE is Flawed .........9

        Plaintiffs Fail to Show Fair Grounds for Litigation and that the Balance
          of Hardships Tips in Their Favor....................................................14

        Plaintiffs Fail to Demonstrate Irreparable Injury .....................................15


POINT II

    IF AN INJUNCTION IS ISSUED, PLAINTIFFS MUST POST A BOND................16

CONCLUSION ........................................................................................................17

**Cases**                                                                    **Page**

Able v. United States, 44 F.3d 128 (2d Cir. 1995) ...........................................................5

Bd. of Educ. of the Hendrick Hudson CSD v. Rowley, 458 U.S. 176 (1982).............................10

Cave v. East Meadow UFSD, 514 F.3d 240 (2d Cir. 2008) ..........................................8

Cosgrove v. Board of Educ. Niskayuna Cent. Sch. Dist. 175 F.Supp. 2d 375
    (N.D.N.Y. 2001) .....................................................................................................5, 6

Engwiller v. Pine Plains CSD, 110 F. Supp. 2d 236 (S.D.N.Y. 2000) ................................8

Mackey v. Bd. of Educ., 386 F.3d 158 (2d Cir. 2004) ...............................................6

Mastrovincenzo v. City of New York, 435 F.3d 78 (2d Cir. 2006)...................................5

Malkentzos v. DeBuono, 102 F. 3d 50 (2d Cir., 1996)...............................................5, 15

Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114................................................................10, 11

Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478
    (2d Cir. 2002)............................................................................................................8

R.E. v. NYC Dept. of Educ., 694 F.3d 167 (2d Cir., 2012).....................................10

Schaffer v. Weast, 546 U.S. 49 (2005) .....................................................................15

Susquenita Sch. Dist. v. Raelee S., 96 F. 3d 78 (3d Cir. 1996) .............................6

Walczak v. Fla. UFSD, 142 F. 3d 119 (2d Cir., 1998) ..........................................10, 12

**Statutes**

8 NYCRR §200.5(m)(2) ..............................................................................................14

20 U.S.C. §1415(i)(2) ..................................................................................................4

20 U.S.C. §1415(i)(2)(A) ............................................................................................7

20 U.S.C. §1415(i)(2)(C) ............................................................................................7

20 U.S.C. §1415(g)(1) ................................................................................................2

20 U.S.C. §1415(g)(2) ................................................................................................1

20 U.S.C.§1415(j)........................................................................................................6

34 C.F.R. §300.518......................................................................................................6

34 C.F.R. §300.518(d).................................................................................................14

New York Education Law Section 4404 .......................................................................1, 2

New York Education Law Section 4404(1)(c) .............................................................7

New York Education Law Section 4404(2)...................................................................7

New York Education Law Section 4404(4)(a) ..............................................................6

## PRELIMINARY STATEMENT

The District disagrees with many of the allegations contained in the Complaint and submits that (1) the Complaint fails to state a claim for relief, and (2) this Court lacks subject matter jurisdiction. It also is noted that the majority of the factual allegations are pending before the New York State Review Officer pursuant to 20 U.S.C. §1415(g)(2) and that many of the factual allegations are beyond the applicable two-year statute of limitations contained in N.Y. Education Law §4404. The District intends to timely file an Answer to the Complaint and/or make a Motion to Dismiss. This Memorandum of Law is submitted in opposition to Plaintiffs' Motion for a TRO or Preliminary Injunction.

## STATEMENT OF FACTS

Plaintiffs are residents of the Shenendehowa Central School District (the "District") and their daughter, V.W., is a student with a disability, as that term is defined by the Individuals with Disabilities Education Act ("IDEA"). Specifically, V.W. is classified by the District's Committee on Special Education ("CSE") as "multiply disabled." She has global developmental deficits in the mild to moderate mentally retarded range. Her full scale IQ is 46, well below the average range. Specific details regarding her functioning levels and the impact of her disability on those functioning levels are set forth in the District's Memoranda of Law submitted in connection with the IDEA's due process procedures, attached to the Complaint as Exhibits "F" and "I".

V.W. is 16 years old. She has attended the District's schools since she was in elementary school. She received special education instruction and related services pursuant to an Individualized Education Program ("IEP") each year. During the 2013-2014 school year, V.W. attended the District's high school and was listed as a member of the 9th grade cohort. During

the 2014-2015 school year, V.W. attends the District's high school and is listed as a member of the 10th grade cohort. In addition, V.W. is eligible to receive, and has received, special education for six weeks during the summer to prevent substantial regression. Specific details regarding V.W.'s educational history are set forth in Exhibits "F" and "I" to the Complaint.

On December 21, 2012, Plaintiffs served the District with a demand for a due process hearing pursuant to the IDEA and Article 89 of the New York State Education Law. On May 29, 2013, Plaintiffs amended their demand for due process. (Exhibits "A" and "C" to the Complaint) On June 20, 2013, the impartial hearing began before Impartial Hearing Officer Mindy Wolman ("IHO"). It thereafter proceeded on seven separate dates, during which time twelve witnesses testified and 1,362 pages of hearing transcript were generated. Including IHO exhibits, 105 exhibits were received into evidence. (See listing appearing in the IHO's Findings of Fact and Decision [Exhibit "H" to the Complaint].) The hearing concluded on July 30, 2013. On December 13, 2013, the IHO issued a decision. On December 18, 2013, the IHO issued a corrected decision. The IHO denied the Plaintiffs' requested relief in some respects and ordered it in other respects. Specifically, the IHO ordered that the District place V.W. in the residential program at the Riverview School in East Sandwich, Massachusetts and fund that placement for the 2013-2014 school year; that the District fund a comprehensive independent occupational therapy evaluation; that the District's Committee on Special Education ("CSE") prepare an IEP providing for specified related services in addition to those already provided to V.W. by the District; and that the District reimburse the Plaintiffs for the $2,000 they paid for V.W. to attend the Riverview School during the 2013 summer.

Thereafter, the District timely appealed the IHO's decision to the New York State Office of State Review ("SRO") in accordance with 20 U.S.C. §1415(g)(1) and Section 4404 of the

New York State Education Law and the Parents cross-appealed the IHO's decision. Answers to each, a Reply, and the submittal of additional evidence were filed by both parties. The last pleading was filed with the SRO on or about February 19, 2014. The parties have not received the SRO's decision and order regarding the appeals.

V.W. continued to attend the District's school with special education instruction and related services throughout the 2013-2014 school year. On October 22, 2013, the District's CSE convened at Plaintiffs' request and developed a new IEP for V.W. for the remainder of the 2013-2014 school year. (Exhibit "1" to the Barker Affidavit) Plaintiff's did not challenge that IEP. The October 22, 2013 IEP continued to be implemented for the remainder of the 2013-2014 school year.

District staff kept regular data regarding V.W.'s performance during the 2013-2014 school year and made quarterly reports regarding V.W.'s progress toward her IEP goals. As set forth in the Barker Affidavit and in the Progress Report for IEP Goals annexed thereto as Exhibit "3", V.W. made meaningful progress in all academic, social and communication goals during the school year, as well as meaningful progress toward activities to assist her as she transitions to life beyond secondary school. As set forth in the Barker Affidavit, V.W. adjusted well to the high school setting and enthusiastically participated in her classes and in activities.

On May 7, 2014, the CSE conducted the annual review of V.W.'s IEP and prepared her IEP for the summer of 2014 and for the 2014-2015 school year. Plaintiffs participated in that meeting. (See Exhibits "4" and "5" to the Barker Affidavit.) The May 7, 2014 IEP was implemented effective July 7, 2014 when V.W. began in attendance at the District's extended school year program. It continues to be implemented. The May 7, 2014 IEP differs from both the October 2013 IEP and the 2013-2014 IEP reviewed by the IHO. The descriptions of V.W.'s

3

present levels of performance, the annual goals set forth, the program accommodations and

supports to be provided, and the special education instruction and related services to be provided

are different, as described in the Prior Written Notices set forth as Exhibits "2" and "5" of the

Barker Affidavit.  Plaintiffs have not challenged the May 7, 2014 IEP.


## POINT I

### PLAINTIFFS FAIL TO MEET THEIR BURDEN FOR A TRO/ PRELIMINARY INJUNCTION.

**Applicable Standard.**

Plaintiffs seek to restrain the New York State Review Officer ("SRO") from performing

his statutorily mandated obligation to issue a decision regarding the appeal from the IHO

decision.  They seek an order declaring that the IHO's decision be deemed "final" and ordering

the District to implement the IHO order.  They seek an order requiring that the District place

V.W. at the Riverview School at the expense of New York State and District taxpayers.

Essentially, Plaintiffs also seek an order circumventing this Court's independent review of the

administrative decision, in contravention of the IDEA (20 U.S.C. 1415[i][2]).  They seek a

mandatory injunction changing the status quo and ordering the ultimate relief sought.

Plaintiffs contend that they must show *either* that they are likely to succeed on the

underlying merits of the administrative action or that there are serious questions going to the

merits to make them a fair ground for litigation, and the balance of hardships tips in their favor.

(Plaintiff's Memorandum of Law, p.4)  Plaintiffs, however, misstate the applicable standard.

Plaintiffs must show a clear and substantial likelihood of success or, at the minimum, a

likelihood of success.

The law is clear that, where a party moves for a mandatory injunction which *alters* the status quo by commanding some positive act, the party must meet a higher standard. Malkentzos v. DeBuono, 102 F. 3d 50, 54 (2d Cir., 1996) "[M]andatory injunctions should be entered 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief. ...['C]lear' showing standard requires moving party to demonstrate greater likelihood of success than parties moving under traditional standard." Malkentzos, supra (citations omitted); see, also, Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir. 2006). Where the requested preliminary injunction will provide Plaintiffs with "all the relief that is sought," the heightened "substantial likelihood" standard also applies. Tom Doherty Assoc. v. Saban Entm't, Inc., 60 F.3d 27, 34-35 (2d Cir. 1995). The movant must make a "clear" or "substantial" showing of a likelihood of success. Cosgrove v. Board of Educ. Niskayuna Cent. Sch. Dist., 175 F.Supp. 2d 375, 392 (N.D.N.Y. 2001) Similarly, where a moving party challenges "'government action taken in the public interest pursuant to a statutory or regulatory scheme,'" the moving party must meet the higher burden of showing a likelihood of success on the merits. Cosgrove, at 392, citing Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995).

Plaintiffs are not seeking an order from this Court that the District maintain the status quo. They are not seeking an order restraining the District from changing V.W.'s educational placement or ordering that the District maintain V.W.'s pendency placement. Rather, Plaintiffs seek this Court's affirmative mandatory order that the District change V.W.'s current educational placement from the District's high school to the Riverview School, a residential school located on Cape Cod, in East Sandwich, Massachusetts, which serves only students with disabilities. Plaintiffs seek an order contrary to the IDEA.

Both the IDEA (20 U.S.C. §1415[j]; 34 C.F.R. §300.518) and the New York Education Law (Section 4404[4][a]) require that, unless the State or local educational agency and the parents otherwise agree, the student is to remain in his or her current educational placement during the pendency of any administrative or judicial proceeding conducted pursuant to the procedural safeguards contained in the IDEA.[1]  This pendency provision of the IDEA represents "'Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.'" Cosgrove, at 383, citing Susquenita Sch. Dist. v. Raelee S., 96 F. 3d 78, 83 (3d Cir. 1996).  It is the public interest that the student remain in the pendency placement.  Cosgrove, at 392.  Plaintiffs, therefore, are requesting this Court to grant a mandatory injunction that directly contravenes the statutory and regulatory procedures contained in both the IDEA and its New York State counterpart, and that violates strong and well-established public policy.

As indicated in Exhibit "N" to Plaintiffs' Complaint, the U.S. Department of Education specifically objected to a proposed settlement of a class action dealing with backlogged SRO decisions whereby the IHO's decision would be treated as a final decision not requiring a State-level review decision.  According to the U.S. Department of Education, allowing the IHO's decision to be final and bypassing the State-level review decision in a two-tier state such as New York, would "essentially rewrite the IDEA's long-standing statutory requirements for either a one-tier or a two-tier due process system – the same due process system that the Supreme Court has consistently recognized as vital to this statutory scheme." (Exhibit "N" to the Complaint,

---

[1]    According to the Second Circuit, there are three variations of "pendency placement":  (1) the placement described in the student's most recently implemented IEP; (2) the operative placement actually functioning at the time when the pendency provision of the IDEA was invoked; and (3) the placement at the time of the previously implemented IEP (Mackey v. Bd. of Educ., 386 F.3d 158, 163 [2d Cir. 2004]).  The Riverview School does not fit into any of these categories.

6

p.3) Therefore, given the strong policy and legislative underpinnings of the two-tier due process scheme, Plaintiffs must show a clear and significant likelihood of success not only on their claim that the SRO is tardy in issuing a decision, but on the merits of their underlying claim.

In addition, Plaintiffs seek as a "preliminary" order that this Court order the full and ultimate remedy sought pursuant to the IDEA's administrative process. The administrative process, however, has not been completed. The administrative process also allows for the opportunity to appeal to this Court, at which time the Court is required to "receive the records of the administrative proceedings; hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, … grant such relief as the court determines is appropriate." (20 U.S.C. §1415[i][2][C]) Plaintiffs seek to bypass both the administrative process and this Court's independent review of the evidence to obtain, as a preliminary order, that which they seek as ultimate relief. They seek to utilize the SRO's tardiness as an excuse to avoid proper consideration of the appropriate educational placement for V.W.

**Plaintiffs Fail to Show a Likelihood of Success.**

**1.    Plaintiffs Failed to Exhaust Their Administrative Remedies.**

The IDEA expressly limits the right to bring a civil action to a party who is aggrieved by the findings and decision made pursuant to an impartial due process hearing and, if there is a two-tier system of review, any appeal therefrom to the State educational agency. (20 U.S.C. §1415[i][2][A]) New York State has a two-tier system of administrative review, including a due process hearing before an independent and impartial hearing officer specifically trained to decide matters arising under the IDEA (N.Y. Educ. Law §4404[1][c]) and an appeal therefrom to a state review officer ("SRO") of the New York Education Department. (N.Y. Educ. Law §4404[2])

7

The law is clear and well established that a party must exhaust both the impartial hearing and the SRO appeal before filing an action in federal court: "only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court." Cave v. East Meadow UFSD, 514 F.3d 240, 245 (2d Cir. 2008); Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002). The purpose of the exhaustion rule is to "channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area. … 'Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.'" Polera, at 487 (citations omitted). Failure to exhaust the administrative remedies pursuant to the IDEA deprives the Court of subject matter jurisdiction. Cave v. E Meadow UFSD, 514 F. 3d 240, 245 and 250-251 (2d. Cir. 2008).

Plaintiffs may claim that exhaustion in this case is futile due to the SRO's delay in issuing a decision. However, the SRO's office is a party to this action. Therefore, the Court has the authority to order that the SRO issue a decision within a reasonable number of days. With such an order, exhaustion of the administrative proceeding is not futile. (See Engwiller v. Pine Plains CSD, 110 F. Supp. 2d 236, 245-246 [S.D.N.Y. 2000])

In addition, as indicated in Exhibit "O" to the Complaint, fewer appeals to the SRO were filed during the first three months of 2014. The New York State Education Department has doubled the staffing at the Office of State Review, has added additional SROs, and has taken other measures to expedite final decisions regarding pending appeals. According to Exhibit "O",

beginning in or about July 2014, independent contractors were hired as a "Backlog Elimination Team" to draft proposed decisions regarding "backlogged" appeals. There is no reason to anticipate, therefore, that a final decision from the SRO will not be forthcoming soon. It cannot be claimed that exhaustion of the administrative procedure is futile.

**2.    Plaintiffs Fail to Prove that there is a Likelihood that they will Prevail Before the SRO.**

As set forth above, Plaintiffs must make a clear and substantial showing of a likelihood of success on the merits before the SRO. However, whether Plaintiffs must meet that elevated standard; whether they must simply prove that they are likely to succeed on the merits; or whether they must show only that there is fair ground for litigation, they fail to meet their burden. Plaintiffs rely solely on the IHO's decision to support their claim that they are likely to succeed on the merits. There is no showing, however, of any reason to believe that the SRO will uphold the IHO and order that the District reimburse Plaintiffs for the amount they paid for V.W. to attend the Riverview School during the summer of 2013; that the SRO will uphold that part of the IHO's decision which ordered placement of V.W. at the Riverview School for the 2013-2014 school year; or that the SRO will uphold any other relief afforded to Plaintiffs. As set forth in the Affirmation of Susan T. Johns, Esq., there is no presumption that the SRO will uphold the IHO's decision and there is personal knowledge of the SRO previously overturning this particular IHO. Any presumption that the SRO will uphold the IHO renders New York's two-tier system meaningless.

**3.    The IHO's Holding that the 2013-2014 IEP did not Provide a FAPE is Flawed.**

The IHO erred in determining that the 2013-2014 IEP for V.W. did not provide a FAPE. Many of the IHO's errors are set forth in the Petition to the SRO and supporting Memorandum

of Law. (Exhibit "I" to the <u>Complaint</u>) Some of the significant errors are highlighted as follows:
(1) the IHO ruled that the District was required to provide V.W. with occupational therapy "to
develop her skills to the best of her ability" (<u>IHO Decision</u>, p. 14), when the U.S. Supreme Court
stated long ago that the "furnishing of every special service necessary to maximize each
handicapped child's potential is, we think, further than Congress intended to go." <u>Bd. of Educ.
of the Hendrick Hudson CSD v. Rowley</u>, 458 U.S. 176, 199 (1982); (2) the IHO required V.W.
to fully achieve all of her IEP goals in order to receive a free appropriate education[2] and then
determined that the 2013-2014 IEP did not provide a FAPE because it was "not reasonably
calculated to enable her to achieve independent mastery of her 2013-14 goals" (<u>IHO Decision</u>,
p.17), when the legal standard is only that the IEP be reasonably calculated to produce progress,
not regression (<u>Walczak v. Fla. UFSD</u>, 142 F. 3d 119, 132 [2d Cir., 1998]) and some
"meaningful benefit," (<u>Mrs. B. v. Milford Bd. of Educ.</u>, 103 F.3d 1114, 1120 [2d Cir., 1997]),
not that it be required to ensure mastery; (3) the IHO evaluated the 2013-2014 IEP as if this
were a unilateral placement case and applied the Second Circuit's decision in <u>R.E. v. NYC Dept.
of Educ.</u>, 694 F.3d 167 (2d Cir., 2012) (Exhibit "H" to the <u>Complaint</u>, p.16) when, in fact, the
Plaintiffs had not unilaterally placed V.W. at the Riverview School for the 2013-2014 school
year, and then, to compound that error, the IHO misinterpreted the Second Circuit's decision in
<u>R.E.</u> as requiring that the IEP be evaluated solely upon the information within its "four corners"
(Exhibit "H" to the <u>Complaint</u>, p.16) when, in fact, the <u>R.E.</u> Court specifically declined to adopt
a "four corners" rule (<u>R.E., supra</u>, at 185); (4) the IHO determined that V.W. had not made

---

[2]    Where V.W. did not fully achieve mastery of all of her IEP goals, she came very close. During the 2011-2012
school year, she achieved 3 of 4 short term objectives under an annual reading goal; she achieved 3 of 4 short term
objectives under an annual writing goal; she achieved 1 of 4 short term objectives under an annual math goal and
she achieved 3 of the 4 short term objectives under an annual social-emotional goal. During the 2012-13 school
year, she achieved 2 of 3 objectives toward an annual writing goal, she achieved all short term objectives or was
progressing satisfactorily toward achievement of her annual IEP goals in the areas of math, auditory memory,
vocabulary, "making inferences" and social communication. (See pages 11 and 12 of the Memorandum of Law
submitted to the SRO. [Complaint, Ex. "I"])

meaningful progress in the area of reading and evaluated the IEPs based upon the availability of specific commercial reading programs (IHO Decision, p. 24) without considering the nature of and limitations imposed by V.W.'s disability ("[i]t is clear that the benefits obtainable by children at one end of the spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between." Rowley, 458 U.S. at 202; Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1121 (2d Cir., 1997): "[o]f course, a child's academic progress must be viewed in light of the limitations imposed by the child's disability") and without considering the progress, meaningful for V.W., made over the years (See Memorandum in support of the District's appeal to the SRO, pp.8, 9 [Exhibit "I" to the Complaint]); (5) the IHO assessed V.W.'s progress in communication skills based upon an erroneous interpretation of standard scores on speech language assessments normed against the general population of students at V.W.'s age, in complete disregard of the unrefuted testimony of V.W.'s speech language therapist regarding those scores and in complete disregard of the unrefuted testimony of the District's psychologist regarding the implications of standard scores on nationally normed assessments (See pages 9 and 10 of the Memorandum of Law in support of the District's Petition to the SRO [Exhibit "I" to the Complaint]); (6) the IHO ignored the reports of the neuropsychologist obtained by Plaintiffs indicating that V.W. had made progress since she had been last evaluated (See Memorandum of Law in support of the District's position, p.11, Exhibit "I" to the Complaint); (7) the IHO erred in determining that the 2013-2014 IEP was not reasonably calculated to afford V.W. with a meaningful educational benefit (see Exhibit "I" to the Complaint, Memorandum of Law, pp.12-15), and (8) the IHO required specific IEP goals regarding typing skills when there is no legal requirement to teach students how to type.

Plaintiffs fail to prove any likelihood that the SRO will uphold these legally wrong and factually inconsistent and erroneous findings of the IHO.

Further, even if the SRO were to uphold the IHO regarding the above flawed findings, Plaintiffs fail to prove that it is likely that the SRO will uphold the IHO's order that the District place V.W. at the Riverview School for the 2013-2014 school year. They fail to prove that it is likely that the SRO will find that a residential school, a <u>most</u> restrictive educational placement, is necessary for V.W. to receive an educational benefit. The Second Circuit has required objective evidence of a student's regression in a day program before determining that a residential placement is necessary: the "IDEA's preference is for disabled children to be educated in the least restrictive environment capable of meeting their needs." <u>Walczak v. Fla. UFSD</u>, 142 F. 3d 119, 132 (2d Cir., 1998)  A "'residential placement is, by its nature, considerably more restrictive than local extended day program.'" <u>Walczak</u> at 132 (citations omitted). "[I]ndeed, it would violate IDEA's preference for the least restrictive educational setting to move a child from a day program where she is making progress to a residential facility simply because the latter is thought to offer superior opportunities." <u>Walczak</u>, at 132.

Even assuming *arguendo* that the IHO correctly determined that V.W. needs special education services in addition to those contained in the 2013-2014 IEP, all of the additional services indicated by the IHO can be provided within the public high school. The IHO ordered a comprehensive occupational therapy evaluation to determine the appropriate level of occupational therapy service and then, for some undefined reason, immediately substituted her own unsupported judgment that V.W. requires such therapy twice a week. (<u>IHO Decision</u>, p.15) Occupational therapy can be provided twice per week within a public school. (The Riverview School does not have any occupational therapists on staff and did not commit to V.W. receiving

12

any occupational therapy if she attended there.)  The IHO ordered that the IEP contain typing goals.  (IHO Decision, p.18)  Typing can be taught in a public school; there is no need to reside in Massachusetts to learn typing skills.  The IHO determined on her own accord, without any supporting professional basis, that V.W. required speech language therapy 4 times per week, with 3 of those times being on an individual basis, during the 2013-2014 school year.  (IHO Decision, p.22)  Speech language therapy can be provided within a public school setting four days per week.  (There is no commitment by the Riverview School to provide the Student with that level of speech language therapy; it has three speech therapists for all of its students and the testimony was that speech therapy is provided in a "fluid model.")  The IHO determined that V.W. should receive reading instruction in a group with fewer students than that which is provided by her 2013-2014 IEP (a 12:1+1 class; essentially a staff to student ratio of 6:1).  Small group reading instruction can be provided within a public school.  There is no need for V.W. to reside in Massachusetts to obtain smaller reading groups.  (There is no evidence that V.W. would receive reading in a smaller group if she were to attend the Riverview School.)  The evidence at the impartial hearing was that students do not need to reside at the Riverview School; it simply provides dormitories for those students who do not choose to commute.

For at least all of the above reasons, is not likely that the SRO will order that V.W. be placed at the Riverview School.  In fact, Plaintiffs' request that this Court restrain the SRO from issuing a decision in this matter is persuasive evidence that even Plaintiffs do not believe that the SRO will uphold the IHO's determination in this regard.

Finally, Plaintiffs request this Court to order that the IHO's Decision and Order be final and that the District place V.W. at the Riverview School at public expense pursuant to that order.  The IHO's Decision and Order was limited to the 2013-2014 school year.  That school year is

13

now over.  A new IEP was developed in May 2014, effective as of July 7, 2014.  V.W. attended

the extended school year program in July and August 2014 pursuant to that new IEP.  That IEP

continues to be implemented for the 2014-2015 school year.  (See the <u>Affidavit of Jill Barker</u>.)

Even if the SRO were to uphold the IHO's order that V.W. be placed at the Riverview School for

the 2013-2014 school year, it would be moot.  Even if this Court were to order that the IHO's

decision be implemented, it would be moot.[3]

### 4.    Plaintiffs Fail to Show Fair Grounds for Litigation and that the Balance of Hardships Tips in Their Favor.

In the alternative, if it is determined that Plaintiffs need to show only that there are

sufficiently serious questions going to the merits of their claim and that the balance of hardships

tips decidedly in their favor, Plaintiffs also fail to meet this burden.  Even if Plaintiffs contend

that their "claim" is the alleged failure of the SRO to issue a timely decision, there is no support

for the injunction they seek.  The proper injunction, if any, is to require the SRO to issue a

decision regarding the parties' appeals.  Plaintiffs fail to show that there is any basis to disregard

the two-tier due process scheme established by the New York State legislature to comply with

the IDEA, particularly when Plaintiffs have made the SRO a party to this action.

In weighing the "balance of hardships," it is not only the hardship to the District and the

Plaintiffs that is to be considered.  The hardship caused by undermining the IDEA system of

procedural safeguards must also be considered.  This hardship tips the scales decidedly in

---

[3]   Plaintiffs may argue that, if this Court orders that the IHO's decision and order is "final", the Riverview School would become V.W.'s pendency placement.  Such an argument is contrary to the IDEA.  The federal regulations provide that, when there is a one-tier hearing system and the due process hearing is conducted by the State Education Agency or, in a two-tier hearing system, where the State review official in an administrative appeal agrees with the parents that a change in placement is appropriate, that placement then is treated as an agreement between the State and the parents for the purpose of altering the pendency placement.  (34 C.F.R. §300.518[d]) N.Y. Education Regulations have a similar provision, invoked when the SRO decision is in agreement with the parents. (8 NYCRR §200.5[m][2])  There is no such provision based upon an IHO decision in a two-tier hearing state such as N.Y.  In a two-tier state such as New York, an IHO's decision, even if "final", is not an agreement on behalf of the State or on behalf of the local educational agency.  It does not alter a student's pendency placement in the event of further administrative or judicial appeal.

opposition to Plaintiffs' motion.  The U.S. Supreme Court has relied consistently on the due

process scheme crafted by Congress in the IDEA, whereby states may choose to have either a

one-tier system (allowing direct appeal from the IHO to the courts) or a two-tier system, where

there is a State level review, like in New York.  (See, for example, Rowley, at 194 and Schaffer

v. Weast, 546 U.S. 49 [2005])  This scheme is viewed as so important that Congress determined

that it must be exhausted before a party may proceed to court, so that the court may have the

benefit of the State's expertise.  Rowley, at 206.  Plaintiffs, however, ask this Court to enjoin the

SRO from complying with this statutory scheme and to treat the IHO decision as final,

presumably thus permitting an appeal directly to this Court.  As Plaintiffs point out, the parties'

appeal to the SRO is not the only appeal in which a decision has not been rendered within 30

days after filing.  If this Court were to grant Plaintiffs' request for relief, presumably there are

numerous similar plaintiffs, both parents and school districts, who are likely to be next in line to

seek this Court's intervention.  The public policy set forth in the IDEA weighs heavily against

the Plaintiffs.

Moreover, even if the IHO's decision is determined to be "final," as Plaintiffs request, the

IHO's decision is, by its terms, limited to the 2013-2014 school year, which has expired.  There

is no basis for disregarding the unchallenged IEP in place for VW for the 2014-2015 school year.

There is no basis upon which to grant Plaintiffs the mandatory injunction they seek.

**5.    Plaintiffs Fail to Demonstrate Irreparable Injury.**

Plaintiffs seek an order that the District reimburse them for the tuition they paid for V.W.

to attend the Riverview School during the summer of 2013.  However, the law is clear that a

claim for reimbursement of money does not constitute irreparable harm.  Malkentzos v.

DeBuono, 102 F.3d 50, 55 (2d Cir., 1996)

Plaintiffs also seek an order that the District implement all other aspects of the IHO's Decision, presumably including placing and funding V.W.'s education at the Riverview School for the 2013-2014 school year; providing a comprehensive independent occupational therapy evaluation to develop "long term" goals and short term objectives; developing an IEP which includes four sessions of speech and language therapy, two sessions of occupational therapy, one session of assistive technology service, and individual and group counseling.  However, Plaintiffs completely fail to show that V.W. will be irreparably harmed if the above terms are not implemented pending the SRO's decision.

V.W. was educated at the District's High School with special education and related services throughout the 2013-2014 school year.  As set forth in the Barker Affidavit, V.W. not only was not irreparably harmed without the above services, she made meaningful educational progress.  There is no evidence to suggest that she will not continue to make meaningful educational progress.  Rather, the evidence is directly contrary to Plaintiffs' conclusory and self-serving claim that V.W. will "stagnate academically, regress socially and miss out on any skills development leading her to suffer irreparable harm." (Walsh Affidavit, ¶13)

## POINT II

### IF AN INJUNCTION IS ISSUED, PLAINTIFFS MUST POST A BOND.

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  In the event that this Court orders that V.W. be placed at the Riverview School, it is respectfully submitted that any such order be conditioned upon Plaintiffs posting a bond of at least seventy-five thousand dollars ($75,000.).

The Riverview School's website states that the 2014-2015 tuition is $74,745.00.[4]  In addition, the District would incur the cost of transporting V.W. from Clifton Park to Cape Cod, and back, at least five times per year, depending upon the number of vacations at the Riverview School.  Such a bond would offset the cost to the taxpayers of the Shenendehowa School District as well as of the State of New York (to the extent that New York State Education aid would be utilized to fund V.W.'s education at the Riverview School), a cost which it is unlikely the District or the State of New York would recoup when it ultimately is determined that the IHO's decision is annulled.

## CONCLUSION

By reason of the foregoing, it is respectfully submitted that the Plaintiffs' motion for a preliminary injunction be denied, with costs awarded to the Defendants.  In the alternative, it is submitted that Plaintiffs be required to post a bond for security in an amount not less than Seventy-Five Thousand Dollars.

Respectfully submitted,

Susan T. Johns, Esq.
**FERRARA, FIORENZA, LARRISON, BARRETT & REITZ, P.C.**
Bar Roll No. 103052
*Attorneys for Defendant Shenendehowa Central School District*
5010 Campuswood Drive
East Syracuse, New York 13057
(315) 437-7600
stjohns@ferrarafirm.com

---

[4]   Based upon the testimony from representatives of the Riverview School at the impartial hearing, that tuition includes the cost of the student's food, the monetary allowance provided to the student, and the cost of whale watching trips and other activities.  (Impartial Hearing Transcript, at pages 1096-1097)